## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

William Lewis Jones,    )
                            )
Plaintiff,          )
                            )
vs.                )      No. 2:12-CV-00143
                            )
Michael J. Astrue    )
Commissioner of      )
Social Security,    )
                            )
Defendant.          )

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits to Plaintiff, William Lewis Jones. For the reasons set forth below, the Commissioner of Social Security's final decision is **AFFIRMED**.

BACKGROUND

On March 2, 2010, Plaintiff, William Lewis Jones ("Plaintiff"), applied for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. section 401 *et seq.*, and Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. section 1383 *et seq.* Plaintiff alleged that his disability began on December 6, 2009. The Social Security Administration ("SSA") denied his

initial application and also denied his claim on reconsideration. Plaintiff requested a hearing, and on December 10, 2010, Plaintiff appeared in person, represented by counsel, at an administrative hearing before Administrative Law Judge ("ALJ") Lisa Chin. Plaintiff and his wife, Donna Jones ("Mrs. Jones") testified at the hearing, along with Lee Knudsen, a Vocational Expert ("VE"). On January 3, 2011, ALJ Chin issued a decision denying Plaintiff's claims, and finding him not disabled because he did not have a listing-level impairment or combination of impairments and he retained the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Plaintiff requested that the Appeals Council review the ALJ's decision, but the request was denied. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). Plaintiff has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g).


Medical Evidence

Plaintiff was born in 1960, was 50 years old when the ALJ rendered her decision, and 48 years old on his alleged onset date. (Tr. 26, 28). Plaintiff is married and has three children. (Tr. 45). He lives with his wife and his two daughters. (Tr. 46). Plaintiff received schooling through the eleventh grade and served

in the Army. (Tr. 40, 42). He is 5'8" and weighs approximately 148 pounds. (Tr. 282). Plaintiff's past relevant work includes working as a tractor-trailer operator, a highway maintenance worker, and a spray booth painter. (Tr. 26). Plaintiff has not engaged in substantial gainful activity since December 6, 2009, and he is insured through December 31, 2014. (Tr. 22). ALJ Chin found that Plaintiff suffered from severe impairments including: cervical spondylosis with myelopathy and associated decreased left upper extremity strength, and carotid artery disease. (Tr. 23). ALJ Chin also found that Plaintiff suffered from non-severe impairments including: hypertension, hyperlipidemia, headaches, a history of acute myocardial infarction, inguinal hernias with surgical repair, and a history of hemorrhoidectomy. *Id*.

Plaintiff underwent an urgent incision and drainage of a perirectal abscess/anal fistulotomy on March 13, 2009 with Dr. David Bleza. (Tr. 262, 398-99). On May 13, 2009, Plaintiff underwent an elective mesh repair of bilateral inguinal hernias with Dr. Bleza. (Tr. 261, 379-89). On May 28, 2009, he returned for a postoperative follow-up with Dr. Bleza and was "not cleared for return to work at present." (Tr. 261).

On November 17, 2009, Dr. Jon D. Misch, D.O., examined Plaintiff for bilateral hand and arm parethisases. (Tr. 362). An electromyography ("EMG") showed mild to moderate bilateral right greater than left median neuropathy at or distal to the wrist.

(Tr. 366). On November 28, 2009, Plaintiff underwent a Magnetic Resonance Imaging ("MRI") of the cervical spine following bilateral arm and hand numbness and occasional neck pain and stiffness. (Tr. 263). The MRI revealed degenerative disc disease at the C5-C6 level with a fairly large central disc herniation, which caused moderate to severe compression of the thecal sac. *Id*. The MRI also revealed a small left paracentral disc herniation at the C4-C5 level. *Id*.

On December 5, 2009, Dr. Misch examined Plaintiff for complaints of increasing pain in his neck, constant numbness and decreased strength in his hands and arms, and shooting pain in both arms following a fall from his truck. (Tr. 423). Dr. Misch recommended that Plaintiff be admitted to St. Anthony's Medical Center ("St. Anthony's"). *Id*. An MRI of the cervical and thoracic spine showed a severe herniated disc at the C5-C6 level with cord compression and symptoms consistent with cervical myelopathy. (Tr. 333). On December 6, 2009, Plaintiff underwent a C5-C6 anterior micro-cervical discectomy and fusion with Dr. Hytham M. Rifai. *Id*. Plaintiff was discharged on December 7, 2009; he was instructed to follow-up with Dr. Misch and his medication included Lisinopril, Toprol, Pravastatin, and Vicodin. *Id*.

On December 15, 2009, Plaintiff was admitted to St. Anthony's for a headache and numbness and tingling in the left arm. (Tr. 325). On December 17, 2009, Plaintiff presented for a

postoperative follow-up with Dr. Misch. (Tr. 422). Dr. Misch instructed that Plaintiff could return to work with the following restrictions: no lifting more than ten pounds, no pushing or pulling, and no operating heavy machinery. *Id*. On January 14, 2010, the Neurological & Spinal Surgery Center completed a Return to Work Form indicating that Plaintiff was not able to return to work at that time. (Tr. 518). Plaintiff attended physical therapy from January 22, 2010 to February 16, 2010. (Tr. 479-99). On January 22, 2010, while at physical therapy, Plaintiff passed out after attempting to lay supine. (Tr. 486). Plaintiff was admitted to St. Anthony's where he underwent a CT angiogram of the head and neck which showed a 45% focal stenosis at the left internal carotid artery. (Tr. 273). On January 25, 2010, Dr. Misch examined Plaintiff following his hospitalization for syncope. (Tr. 436). Dr. Misch indicated that Plaintiff showed decreased range of motion in the C-spine in all directions. *Id*.

On March 2, 2010, Cynthia Gropper, ANP ("Gropper"), an Advanced Nurse Practitioner at the Community Spine and Neurosurgery Institute, examined Plaintiff for complaints of continued weakness in the upper extremities, left arm weakness, numbness, and tingling. (Tr. 502). Gropper reviewed the December 2009 MRI of Plaintiff's spine and indicated a desire to repeat the MRI to ensure there was not a residual disc placing pressure on the spinal cord. (Tr. 503).

During a follow-up visit on March 9, 2010, Dr. Rifai examined Plaintiff for neck pain. (Tr. 512). Dr. Rifai diagnosed cervical spondylosis with myelopathy. (Tr. 513).

On April 15, 2010, Plaintiff underwent a Medical Evaluation with Dr. Mohammed Rahmany, M.D., a physician selected by the State of Indiana Disability Determination Bureau. (Tr. 576). Dr. Rahmany noted that Plaintiff exhibited limited movement on the right and left side of his neck. (Tr. 578). Dr. Rahmany diagnosed Plaintiff with Cervical Spondylosis and Cervical Radicululopathy and opined that Plaintiff would benefit from physical therapy to further determine his long term disability. *Id*.

On May 4, 2010, Dr. Fernando R. Montoya, M.D., completed a Physical Residual Functional Capacity Assessment. (Tr. 582-89). Dr. Montoya indicated that Plaintiff could occasionally lift twenty pounds, sit/stand/walk about six hours in an eight-hour workday, and occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl. *Id*. Further, Dr. Montoya indicated that Plaintiff should never climb ladders/ropes/scaffolds, Plaintiff should avoid concentrated exposure to extreme heat or cold, wetness, humidity, noise, vibration or fumes, and Plaintiff should avoid even moderate exposure to hazards such as machinery and unprotected heights. *Id*.

On November 16, 2010, Dr. Misch evaluated Plaintiff and indicated that Plaintiff reported a very limited range of motion in his cervical spine. (Tr. 593).

6

<u>Plaintiff's Hearing Testimony</u>

During the hearing before ALJ Chin, Plaintiff testified as follows. He is currently not working and he is in pain all the time. (Tr. 42-43, 47). He has a limited range of motion when turning his head left or right and when looking up and he has decreased feeling and strength in his arms, left worse than right. (Tr. 49-52). Plaintiff further testified that he experiences "mild" and "bad" headaches; mild headaches occur approximately three to four times per week and bad headaches occur approximately one to two times per week. (Tr. 70). He shifts positions all day long and can only sit in one position for approximately fifteen to twenty minutes. (Tr. 53). Further, he drops things four to five times per week, and consequently, he tries not to life anything. (Tr. 54). Finally, he no longer has any hobbies and he does not engage in activities of daily living such as grocery shopping, doing laundry, or taking out the garbage. (Tr. 48-49).

<u>Plaintiff's Wife's Hearing Testimony</u>

During the hearing before ALJ Chin, Mrs. Jones testified that Plaintiff frequently drops his dinner plate. (Tr. 75). Mrs. Jones also testified that Plaintiff can no longer mow the grass, that going to the grocery store is very hard for Plaintiff, and that Plaintiff cannot help with general home maintenance. (Tr. 76). Further, Mrs. Jones stated that Plaintiff complains about pain

7

every day and that "[h]e gets headaches really bad." (Tr. 82). Finally, Ms. Jones testified that Plaintiff has trouble turning his neck, that he has to turn his entire body, and that he uses four pillows at night to sleep at a comfortable angle. (Tr. 83-85).

## Vocational Expert's Hearing Testimony

The VE testified at the hearing as follows. Plaintiff's past work experience included work as a tractor-trailer operator (DOT #904.383-010; semi-skilled work at the medium level of exertion), a highway maintenance worker (DOT #899.684-014; semi-skilled work at the medium level of exertion), and a spray booth painter (DOT #741.684-026; semi-skilled work at the medium level of exertion, but which Plaintiff performed at the heavy level of exertion). (Tr. 89-90).

In response to a hypothetical posed by ALJ Chin, the VE testified that an individual with Plaintiff's age, education, work experience, and the ability to perform a limited range of light work with limitations including: a sit/stand option (every hour for one to two minutes); never climbing ladders, ropes, or scaffolds; only occasionally climbing ramps; no overhead reaching with the left arm; and work that does not require exposure to cold, heat, hazardous machinery, and unprotected heights would not be able to perform any of Plaintiff's past relevant work. (Tr. 90-91). However, the VE further testified that such a hypothetical

individual would be able to perform light work as a "sales attendant" (DOT #211.467-030) or a "light cashier" (DOT #211.462-010). (Tr. 90-92).

On cross examination by Plaintiff's counsel, the VE testified that if the individual described in the ALJ's hypothetical above were prone to dropping items as light as a dinner plate, the only work such an individual could perform would be as an informational clerk (DOT #237.367-018). (Tr. 93-94). Plaintiff's counsel then posed a hypothetical individual who could not turn his head side-to-side, look up, or bend his head back more than a slight degree. (Tr. 95-96). The VE testified that such an individual could perform the information clerk position. (Tr. 96). The VE also testified that an individual, as described in the ALJ's hypothetical, who has severe headaches at least three times per month would not be employable. (Tr. 97). Finally, the VE stated that all jobs would be eliminated for an individual who loses fine finger coordination four to five times a week. (Tr. 97-98).


DISCUSSION

Review of Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id.*

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence exists, the Court shall examine the record in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or re-weighing evidence. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). With that in mind, however, this Court reviews the ALJ's findings of law de novo and if the ALJ makes an error of law, the Court may reverse without regard to the volume of evidence in support of the factual findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

As a threshold matter, for a claimant to be eligible for DIB or SSI benefits under the Social Security Act, the claimant must establish that he is disabled. To qualify as being disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five step evaluation:

Step 1: Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2.

Step 2: Is the claimant's impairment or combination of impairments "severe" and expected to last at

least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3.

Step 3: Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4.

Step 4: Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner.

Step 5: Is the claimant able to perform any other work within his residual functional capacity in the national economy: If yes, the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(I)-(v) and 416.920(a)(4)(I)-(v); *see also Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994).

In this case, the ALJ found that Plaintiff suffers from the following severe impairments: cervical spondylosis with myelopathy and associated decreased left upper extremity strength, and carotid artery disease. (Tr. 23). The ALJ also found that Plaintiff suffers from the following non-severe impairments: hypertension, hyperlipidemia, headaches, history of acute myocardial infarction, inguinal hernias with surgical repair, and history of hemorrhoidectomy. *Id*.

The ALJ further found that Plaintiff did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526,

11

416.920(d), 416.925, and 416.926). *Id*. ALJ Chin then made the following Residual Functional Capacity ("RFC") determination:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except work must include a sit/stand option where claimant is allowed to sit down briefly once an hour, claimant may never climb ladders, ropes, and scaffolds, only occasionally climb ramps or stairs, claimant may never reach overhead with his non-dominant left arm, and avoid all exposure to cold, heat, moving machinery, unprotected heights, and hazardous machinery.

(Tr. 23). Based on Plaintiff's RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including work as a sales rental clerk and light cashier. (Tr. 27).

Plaintiff believes the ALJ committed several errors requiring reversal. Specifically, Plaintiff sets forth four main arguments. First, he alleges the ALJ erroneously concluded that Plaintiff did not meet Listing 1.04. (DE #16-1, p. 8). Second, he contends the ALJ improperly assessed his RFC. *Id*. Third, he alleges the ALJ's credibility assessment is erroneous and not supported by substantial evidence. *Id*. Finally, Plaintiff claims the ALJ incorrectly found at Step 5 that he is able to perform certain work. *Id*.


Step 3 Determination

Plaintiff argues that the ALJ erred at Step 3 when she found that his impairments do not meet or medically equal the criteria of

12

an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(DE #16-1, pp. 9-10). The ALJ stated in her opinion that:

> The claimant does not meet or medically equal
> Listing 1.04 Disorders of the Spine, because he
> does not have degenerative disc disease that
> results in compromise of a nerve root or the spinal
> cord. There is no evidence of nerve root
> compression, spinal arachnoiditis, or lumbar spinal
> stenosis resulting in the inability to ambulate
> effectively. Therefore, the undersigned finds that
> the claimant does not meet or medically equal
> Listing 1.04 Disorders of the Spine.

(Tr. 23).

Importantly, Plaintiff has the burden of proof to demonstrate that he has medical conditions that meet, or are equal in severity to every element of a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993) (overruled on other grounds) (finding the applicant must satisfy all of the criteria in the Listing to receive an award of disability insurance benefits under Step 3).

Listing 1.04A provides in relevant part:

> 1.04A Disorders of the spine (e.g., herniated
> nucleus pulposus, spinal arachnoiditis, spinal
> stenosis, osteoarthritis, degenerative disc
> disease, facet arthritis, vertebral fracture),
> resulting in compromise of a nerve root (including
> the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized
> by neuro-anatomic distribution of pain, limitation
> of motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness)
> accompanied by sensory or reflex loss and, if there
> is involvement of the lower back, positive
> straight-leg raising test (sitting and supine).

Listing 1.04.

Here, Plaintiff argues that "the ALJ ignored evidence favorable to Plaintiff that led both his treating physicians, as well as State-agency physicians, to conclude he suffers from cervical spondylosis with myelopathy and associated decreased upper extremity strength, *which is indicative of nerve root compression*." (*See* DE #16-1, p. 10 (citing Tr. 512, 578)) (emphasis added). The portions of the record cited by Plaintiff to support this argument confirm that Plaintiff does, in fact, suffer from cervical spondylosis with myelopathy and associated decreased upper extremity strength. (Tr. 512, 578). However, nothing in the record supports Plaintiff's bare conclusion that these conditions are indicative of nerve root compression.

Further, Plaintiff points to a November 28, 2009 MRI, which revealed "degenerative disc disease at the C5-C6 level with a large central disc herniation *compressing* the thecal sac," and a December 6, 2009 MRI, which showed "a severe herniated disc at C5-C6 *with moderate to severe cord compression*." (DE #16-1, p. 10 (emphasis in original)). However, as Defendant points out in his Memorandum, the November 28, 2009 MRI pre-dated Plaintiff's alleged disability onset date and cervical surgery, and the December 6, 2009 MRI occurred on the alleged onset date, but prior to a reparative surgery that took place on that same day to correct Plaintiff's disc herniation. (DE #20, p. 6; Tr. 263, 333). Further, a post-

14

surgical MRI on January 23, 2010, showed no evidence of nerve root impingement or compromise and a May 4, 2010 Physical Residual Functional Capacity Assessment indicated that Plaintiff's "preoperative symptoms have resolved." (Tr. 300, 583).[1] Plaintiff points to no other evidence in the record (and the Court finds no evidence) that demonstrates any on-going "nerve root compression" as required by Listing 1.04A. As such, Plaintiff has not met his burden of showing that he meets every element of a listed impairment. Accordingly, this Court finds the ALJ made a proper finding at Step 3.

The ALJ's RFC Determination

Plaintiff also argues that the ALJ improperly assessed his RFC. (DE #16-1, pp. 10-13). In the present case, the ALJ made the following RFC determination:

> [C]laimant has the [RFC] to perform light work . . . except work must include a sit/stand option where claimant is allowed to sit down briefly once an hour, claimant may never climb ladders, ropes, and scaffolds, only occasionally climb ramps or stairs, claimant may never reach overhead with his non-dominant left arm, and avoid all exposure to cold, heat, moving machinery, unprotected heights, and hazardous machinery.

---

[1] In Defendant's Memorandum, Defendant states that "the state agency physicians did not find that Plaintiff had a listing level impairment, and there are no contrary opinions in the record." (DE #20, p. 6). This statement is somewhat misleading. The portions of the record cited by Defendant to support this statement (Tr. 583-89, 592) do not indicate that a state agency physician expressly addressed and concluded that Plaintiff did not meet a listing-level impairment. Rather, in fact, the state agency physicians said nothing about whether Plaintiff met a listing-level impairment.

(Tr. 23)

In determining whether a plaintiff is disabled, an ALJ is required to "consider all [the plaintiff's] symptoms, including pain, and the extent to which [the plaintiff's] symptoms can reasonably be accepted as consistent with the objective medical evidence." 20 C.F. R. § 404.1529(a); 20 C.F.R. § 416.929(a). Moreover, in making a RFC determination, an ALJ "must consider all allegations of physical and mental limitations or restrictions . . . and the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p; *see also* 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (indicating that the ALJ must consider the aggregate effect of all alleged impairments – "including those impairments that in isolation are not severe."). Ultimately, the ALJ must support a RFC determination by "citing specific medical facts . . . and nonmedical evidence." SSR 96-8p.

In attacking the ALJ's RFC determination, Plaintiff makes three main arguments. First, Plaintiff argues that the ALJ improperly concluded that Plaintiff's headaches were not severe and that the ALJ merely speculated as to the severity of Plaintiff's headaches. (DE #16-1, p. 11). Specifically, Plaintiff contends

16

that the ALJ disregarded hearing testimony about the severity of Plaintiff's headaches. *Id*.

In *Carradine v. Barnhart*, the Seventh Circuit provided the following explanation regarding allegations of subjective complaints of pain:

> Applicants for social security benefits who claim to be disabled from working because of extreme pain make the job of a social security [ALJ] a difficult one. Medical science confirms that pain can be severe and disabling even in the absence of 'objective' medical findings . . . *And so once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.*

360 F.3d 751, 753 (7th Cir. 2004) (internal citations omitted) (emphasis added). In an unpublished opinion, the Seventh Circuit further explained that "[c]laims of disabling pain 'based solely on the claimant's subjective complaints' cannot be discredited simply because of a lack of objective medical confirmation, although the lack of confirmation can factor into the analysis." *See Goble v. Astrue*, 385 F. App'x 588, 592 (7th Cir. 2010) (citing, *inter alia*, *Parker v. Astrue*, 597 F.3d 920, 922–23 (7th Cir. 2010)).

In the present case, at Step 2, the ALJ found that Plaintiff suffered from various non-severe impairments, including headaches. (Tr. 23). The ALJ concluded that Plaintiff's headaches were non-severe because there was no evidence that the headaches caused any functional limitations or that the headaches could not be

controlled with appropriate treatment. *Id*. Thus, this case is not like *Goble*, where the ALJ improperly disregarded Plaintiff's subjective complaints of pain solely because of a lack of objective medical evidence confirming that pain. Rather, in this case, the ALJ concluded that Plaintiff's headaches were non-severe because there was no objective medical evidence that Plaintiff's ability to work was limited by his headaches or that Plaintiff's headaches could not be controlled with appropriate treatment. (Tr. 23). Moreover, as explained in *Carradine*, if a plaintiff produces "*medical evidence of an underlying impairment*," an ALJ may not discredit the plaintiff's subjective complaints of pain merely because those subjective complaints are not supported by medical evidence. *Carradine*, 360 F.3d at 753. In this case, however, Plaintiff has not presented any medical evidence of an underlying impairment to which his headaches could be attributed.[2] Therefore, the Court finds Plaintiff's first argument in opposition to the ALJ's RFC determination unpersuasive.

Plaintiff's second argument in opposition to the ALJ's RFC determination is that "the ALJ failed to take Plaintiff's headaches or his tendency to drop objects into consideration." (DE #16-1, p. 12). The SSA has explained that "[i]n assessing RFC, the

---

[2] The Court also notes that Plaintiff does not point to any evidence in the record that indicates Plaintiff suffers from a history of headaches in either his initial Memorandum or his Reply Brief. Specifically, the Court notes that in his Reply Brief, Plaintiff states that "Plaintiff's medical records document his frequent headaches." (DE #21, p. 2). However, Plaintiff cites only to his own hearing testimony to support this statement. *See Id*. (citing Tr.70).

adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p. Moreover, "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record." *Id*. (emphasis in original). In regards to what evidence is "relevant," the SSA provided the following explanation:

> *The RFC Assessment Must be Based Solely on the Individual's Impairment(s)*. The Act requires that an individual's inability to work must result from the individual's physical or mental impairment(s). Therefore, in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to *medically determinable* impairments.

*Id*. (emphasis added).

As noted above, in the present case, the ALJ found that Plaintiff's headaches were non-severe because there was no evidence that the headaches imposed any functional limitation on Plaintiff's ability to work. (Tr. 23). Further, Plaintiff has not identified any evidence in the record that indicates Plaintiff's headaches limit his ability to work. Under SSR 96-8p, a RFC determination must be based only on "limitations and restrictions attributable to *medically determinable* impairments." Here, there is no medical evidence whatsoever as to the extent of the limiting effect of Plaintiff's headaches. Thus, even assuming that Plaintiff's headaches are "medically determinable" absent any medical evidence, the ALJ did not err in failing to account for Plaintiff's headaches in her RFC determination because there is no evidence of any

limitations or restrictions attributable to the headaches.

Plaintiff also contends that the ALJ failed to account for his tendency to drop objects in her RFC determination. (DE #16-1, p. 12). However, in assessing Plaintiff's RFC, the ALJ referred to an April 15, 2010 consultative examination with Dr. Rahmany, in which Dr. Rahmany found that Plaintiff's grip strength was 5/5, that Plaintiff's fine finger manipulative ability was normal, and that Plaintiff had the ability to open a jar, zip, unzip, button and unbutton. (Tr. 25). Plaintiff points to no evidence, other than his own hearing testimony, to illustrate his tendency to drop things. Accordingly, the Court finds Plaintiff's argument regarding the ALJ's failure to include his tendency to drop things in her RFC determination unpersuasive.

Finally, Plaintiff argues that "the ALJ's RFC was tailored to the result." (DE #16-1, p. 12). Specifically, Plaintiff argues that the ALJ's sit/stand option was based on the VE's testimony rather than the objective medical evidence. *Id*. at 13. The Court finds this argument meritless. A review of the hearing testimony reveals that the sit/stand option was included in the ALJ's hypothetical under the ALJ's own volition and not prompted by the VE. (Tr. 90-91).[3] Although the VE asked the ALJ for clarification

---

[3] Moreover, in assessing Plaintiff's credibility, the ALJ stated that she "grants significant weight to the opinion expressed by the State Agency Examiner in 9F." (Tr. 26). Turning to Exhibit 9F, the State Agency Examiner opined that Plaintiff is limited to standing/sitting to six hours in an eight hour workday. (Tr. 583).

regarding the sit/stand option, the ALJ's clarification—that the sit/stand option would need to be hourly and for a duration of a minute or two—was not altered in anyway by the VE's testimony. (Tr. 91). Moreover, Plaintiff makes several unsubstantiated statements in support of this argument, but points to nothing in the record to illustrate how the ALJ's explanation of her RFC determination is wrong. (DE #16-1, pp. 12-13). Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

Credibility

Plaintiff also complains that "the ALJ's credibility assessment is erroneous and not supported by substantial evidence." (DE #16-1, p. 8). Because the ALJ is best positioned to judge a claimant's truthfulness, this Court will overturn an ALJ's credibility determination only if it is patently wrong. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). However, when a claimant produces medical evidence of an underlying impairment, the ALJ may not ignore subjective complaints solely because they are unsupported by objective evidence. *Schmidt v. Barnhart*, 395 F.3d 737, 745-47 (7th Cir. 2005); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). "In assessing a claimant's credibility, the ALJ must consider subjective complaints of pain if the claimant can

establish a medically determined impairment that could reasonably be expected to produce the pain." *Indoranto*, 374 F.3d at 474 (citing 20 C.F.R. § 404.15.29, SSR 96-7p; *Clifford*, 227 F.3d at 871).

Further, "the ALJ cannot reject a claimant's testimony about limitations on [his] daily activities solely by stating that such testimony is unsupported by the medical evidence." *Id*. Instead, the ALJ must make a credibility determination that is supported by record evidence and sufficiently specific to make clear to the claimant, and to any subsequent reviewers, the weight given to the claimant's statements and the reasons for the weight. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003). Ultimately, "[a]s long as the ALJ's decision is supported by substantial and convincing evidence, it deserves this Court's deference." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

In evaluating the credibility of statements supporting a Social Security application, the Seventh Circuit has noted that an ALJ must comply with the requirements of SSR 96-7p. *Steele v. Barnhart*, 290 F.3d 936, 941-42 (7th Cir. 2002). This ruling requires ALJs to articulate "specific reasons" behind credibility evaluations; the ALJ cannot merely state that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR 96-7p. Furthermore, the ALJ must consider specific factors when assessing the credibility of an individual's

statement including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *Golembiewski*, 322 F.3d at 915-16.

It is true that the ALJ states, "[t]herefore, the undersigned finds that the claimant's allegations regarding his impairment are not fully credible," which standing by itself, seems cursory boilerplate with regard to the credibility determination. (Tr. 26.) However, "it is proper to read the ALJ's decision as a whole." *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (finding that requiring an ALJ to repeat substantially similar factual analyses at both steps three and five would be "a needless

23

formality."). Here, the ALJ explained in detail her RFC determination, and her analysis in that section of her opinion also goes toward her credibility determination.

The Court finds the ALJ properly considered the factors set forth in SSR 96-7p before arriving at her credibility determination. Specifically, the ALJ found that:

> [Plaintiff] reported that he is able to make himself a sandwich, fold laundry, and shop for groceries every day for 20 minutes at a time. He reported that he can pay bills, count change, and handle a checking and savings account. He reported he is able to spend time with others and visit people twice weekly.

(Tr. 26). Further, in explaining her RFC determination, the ALJ noted that "[p]ost-surgery, claimant stated that he was feeling much better, with his neck pain mostly resolved, with him able to move his neck and rotate his neck without difficulty" and that during an examination at the Community Spine and Neurosurgery Institute, "[i]t was noted that his posture was better than before the surgery." (Tr. 24). Moreover, the ALJ found that despite a diagnosis of cervical spondylosis with myelopathy, Dr. Rifai observed that "claimant's range of motion was normal, and strength and tone were normal for both right and left upper and lower extremities" and that "[t]he claimant reported that his preoperative symptoms were resolved." (Tr. 24-25). Finally, the ALJ noted that although Plaintiff attended physical therapy from February 15, 2010 to March 11, 2010, Plaintiff did not show up for

his three remaining physical therapy appointments. (Tr. 24).
Accordingly, the Court finds that the ALJ properly assessed the
factors set forth in SSR 96-7p.

Plaintiff also argues that "ALJ Chin failed [to] recognize
Plaintiff's subjective complaints of pain as required by SSR 96-
7p." (DE #16-1, p. 15). Specifically, Plaintiff contends that:

> Plaintiff's testimony details the amount of his
> pain and its limiting effects on his abilities.
> (R.40-73). Plaintiff stated that he is in constant
> pain (R.47); he is unable to sit for more than
> twenty minutes, unable to lift anything, and has
> frequent, severe headaches. (R. 40-73). *The
> severity of Plaintiff's pain can further be deduced
> by the significant number of hospital and doctor's
> visits for upper extremity pain, weakness, and neck
> pain, the surgical attempts at remedying the pain,
> and the narcotic pain medications including
> Vicodin.*

*Id.* (emphasis added). Although the first part of this statement
accurately characterizes Plaintiff's hearing testimony, Plaintiff
provides no support for the general statement that "[t]he severity
of Plaintiff's pain can further be deduced by the significant
number of hospital and doctor's visits for upper extremity pain,
weakness, and neck pain, the surgical attempts at remedying the
pain, and the narcotic pain medications including Vicodin." As
noted in Plaintiff's Memorandum, "[a] claimant's subjective
testimony *supported by medical evidence* . . . is itself sufficient
to support a finding of disability." (*See* DE #16-1, p. 15
(emphasis added) (citing *Carradine*, 360 F.3d at 753)). Here,
however, Plaintiff's subjective testimony is simply not supported

by any medical evidence. Moreover, as explained above, the ALJ cited to numerous specific examples in the record indicating that Plaintiff's symptoms had resolved or improved after his surgery on December 6, 2009.

Plaintiff also argues that the ALJ failed to adequately consider the testimony of Mrs. Jones in assessing Plaintiff's credibility. (DE #16-1, pp. 15-16). In her opinion, the ALJ stated that: "[t]he undersigned grants little weight to the testimony of the witness, Donna Jones, who is the spouse of the claimant. Her testimony is not consistent with the medical evidence as a whole." (Tr. 26). Although the ALJ's rationale for discrediting Mrs. Jones' testimony is brief, an ALJ need not give a detailed explanation for discrediting a supporting witness's testimony if the ALJ already addressed the issues raised by Plaintiff's testimony, and the supporting witness's testimony is essentially redundant. *See Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994) (finding the ALJ did not err in failing to mention reasons for rejecting the wife's testimony where the ALJ had already adequately addressed the husband's own testimony). As explained above, in this case, the ALJ provided a detailed explanation, supported by specific medical evidence, as to the basis of her credibility determination for Mr. Jones. As such, the ALJ was not required to articulate specific reasons for discrediting Mrs. Jones' testimony.

Finally, Plaintiff argues that the ALJ improperly considered the fact that he failed to stop smoking after being advised to do so in making her credibility determination. In *Shramek v. Apfel*, the Seventh Circuit provided the following explanation of the relationship between an ALJ's credibility assessment and a plaintiff's failure to cease smoking after being instructed to do so by a medical provider:

> Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health. One does not need to look far to see persons with emphysema or lung cancer—directly caused by smoking—who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to stop. This is an unreliable basis on which to rest a credibility determination.

226 F.3d 809, 813 (7th Cir. 2000); *see also Hunt v. Astrue*, No. 2:10-cv-376-PRC, 2011 WL 4005368, at *11 (N.D. Ind. Sept. 8, 2011) (explaining that there must be a "link" between a plaintiff's failure to quit smoking and the alleged symptoms causing the plaintiff's disability, and even if a link is established, a plaintiff's failure to quit smoking is an "extremely tenuous" basis on which to ground a credibility assessment). Thus, a plaintiff's failure to quit smoking after being advised to do so should generally not serve as the basis for an ALJ's credibility determination.

However, the Seventh Circuit has also recognized that an ALJ's

reasoning need not be perfect. *Halsell v. Astrue*, 357 F. App'x 717, 723 (7th Cir. 2009). Rather, so long as the flaws in the ALJ's analysis do not undermine a credibility determination that is otherwise supported by substantial evidence, the ALJ's findings should be upheld. *See Id*. at 722-23 (upholding an ALJ's credibility determination, despite the fact that the ALJ drew an improper inference from a plaintiff's failure to seek treatment (along with other minor errors), because, as a whole, the ALJ's credibility determination was supported by substantial evidence); *Shramek*, 226 F.3d at 814 (upholding an ALJ's denial of disability benefits, even though the ALJ improperly based her credibility determination on the plaintiff's failure to quit smoking, because the errors did not impact the final outcome of the case).

In the present case, the ALJ made the following statement about Plaintiff's failure to quit smoking after being instructed to do so by his medical providers:

> Despite having carotid artery disease and a history of cervical spondylosis, [Plaintiff] smokes one pack to a pack and a half on a daily basis. He has been repeatedly advised by his doctors to quit smoking, and he was encouraged in physical therapy to quit. Therefore, the undersigned finds that the claimant's allegations regarding his impairments are not fully credible.

(Tr. 26) (internal citations to the record omitted). As explained in *Shramek* and *Hunt*, it was improper for ALJ Chin to treat Plaintiff's failure to quit smoking as a basis for finding him not fully credible. However, despite this error, the Court finds that

28

the ALJ's credibility assessment, as a whole, is supported by substantial evidence.  In the portion of the opinion immediately preceding the reference to Plaintiff's failure to quit smoking, the ALJ points to specific medical evidence that indicates Plaintiff's ability to do more tasks than his hearing testimony would suggest he is capable of.  (Tr. 23-26).  As such, the Court finds that the ALJ's improper reference to Plaintiff's continued smoking does not warrant remand or reversal.

Accordingly, the Court finds that the ALJ's credibility determination is convincing and supported by substantial evidence.

Step 5 Determination

Finally, Plaintiff argues that "[t]he ALJ made an erroneous Step Five determination that is unsupported by the substantial weight of the evidence."  (DE #16-1, p. 16).  In attacking the ALJ's Step 5 Determination, Plaintiff first argues that "the ALJ did not present a complete RFC hypothetical to the VE" because the ALJ failed to include Plaintiff's headaches in her hypothetical. Id. at 17.  The Court finds this argument unpersuasive.  At Step 2, the ALJ found that Plaintiff's headaches were non-severe because there was no evidence "indicating any functional limitations resulting from these impairments."  (Tr. 23).  Thus, because there was no evidence that Plaintiff's headaches imposed any functional limitations, there was no reason for the ALJ to account for

Plaintiff's headaches in her hypothetical to the VE.

Plaintiff also contends that the ALJ's Step 5 finding is erroneous because the ALJ failed to inquire about any conflicts between the VE's testimony and the DOT, as required by SSR 00-4p. (DE #16-1, p. 18). Specifically, Plaintiff argues there were conflicts regarding the sales rental clerk and cashier jobs given by the VE with regard to Plaintiff's ability to "reach." *Id*.

SSR 00-4p states that:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. *At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.*

SSR 00-4p (emphasis added).

At the hearing, when the ALJ examined the VE, the ALJ stated to the VE that: "In the event your testimony diverges from the DOT, can you - - would you let me know and identify . . . the basis for your testimony?" (Tr. 89). The VE responded: "Yes, I will." *Id*. Thus, the ALJ fulfilled her duty under SSR 00-4p to inquire about conflicts between the DOT and the VE's testimony, and moreover, there were no apparent conflicts to resolve. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions

the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the Dictionary's—for the Dictionary, after all, just records other unexplained conclusions and is not even subject to cross-examination."). As such, this Court finds that the ALJ made a proper Step 5 determination.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **AFFIRMED**.

DATED: March 4, 2013                    **/s/ RUDY LOZANO, Judge**
                                        **United States District Court**